JEFFREY G. KNOWLES (State Bar No. 129754)
JULIA D. GREER (State Bar No. 200479)
MARTIN D. WHITE (State Bar No. 253476)
COBLENTZ PATCH DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, California 94111-4213
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email:   ef-jgk@cpdb.com
         ef-jdg@cpdb.com
         ef-mdw@cpdb.com

Attorneys for Defendant/Crossclaimant
SONY MUSIC ENTERTAINMENT,
erroneously sued as SONY MUSIC
ENTERTAINMENT, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| METHVEN & ASSOCIATES PROFESSIONAL CORPORATION<br><br>v.<br><br>SCARLETT PARADIES-STROUD as administrator of the ESTATE OF ANDREW B. STROUD, et al.,<br><br>Defendants in Interpleader. | Case No.: C 13-01079 JSW<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>**SONY MUSIC ENTERTAINMENT'S CROSSCLAIM FOR:**<br><br>1. RESCISSION<br>2. BREACH OF CONTRACT<br>3. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING<br>4. DECLARATORY RELIEF |
| SONY MUSIC ENTERTAINMENT<br>           Crossclaimant,<br><br>v.<br><br>THE ESTATE OF NINA SIMONE by its duly authorized administrator SAN PASQUAL FIDUCIARY TRUST; WALLY ROKER d/b/a ICU ENT. DIST. d/b/a WALLY ROKER MUSIC; STEVEN AMES BROWN; CASTLE ROCK ENTERTAINMENT; WARNER BROS. ENTERTAINMENT, INC.; and WARNER BROS. INDEPENDENT PICTURES<br><br>           Crossdefendants. | Date action filed: March 8, 2013<br>Courtroom 6, 17th Floor<br>Trial Date:     None |

Defendant and crossclaimant Sony Music Entertainment ("Sony Music"), erroneously sued herein as Sony Music Entertainment, Inc., pursuant to March 30, 2015 Stipulation and Order hereby crossclaims against defendants and crossdefendants the Estate of Nina Simone by its duly authorized administrator San Pasqual Fiduciary Trust, Wally Roker d/b/a ICU Ent. Dist. d/b/a Wally Roker Music, Steven Ames Brown, Castle Rock Entertainment, Warner Bros. Entertainment, Inc., and Warner Bros. Independent Pictures, as follows:[1]

## THE PARTIES

1. Defendant and crossclaimant Sony Music Entertainment ("Sony Music") is a Delaware General Partnership with its principle offices in New York.

2. Upon information and belief, defendant and crossdefendant the Estate of Nina Simone by its duly authorized administrator San Pasqual Fiduciary Trust (the "Simone Estate") is an estate administered in California.

3. Upon information and belief, defendant and crossdefendant Wally Roker d/b/a ICU Ent. Dist. d/b/a Wally Roker Music is an individual residing in California. Upon information and belief, ICU Ent. Dist. and Wally Roker Music are business designees owned and operated by Wally Roker with principal places of business in California.

4. Defendant and crossdefendant Steven Ames Brown ("Brown") is an individual residing in San Francisco, California.

5. Upon information and belief, defendant and crossdefendant Castle Rock Entertainment is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in New York.

---

[1] Sony Music does not name Scarlett Paradies Stroud, as administrator of the Estate of Andrew B. Stroud, Andy Stroud, Inc., or Stroud Production and Enterprises, Inc. (the "Stroud Parties") as crossdefendants to this crossclaim based on Sony Music's understanding that those parties have been dismissed from this case by way of this Court's September 24, 2014 Order (Dkt. No. 152), in which the Court dismissed the Stroud Defendants' affirmative counterclaims, struck the Stroud Defendants' answer, and entered default against the Stroud Defendants. Should the Stroud Defendants successfully appeal the Court's September 24, 2014 Order, Sony Music reserves the right to amend its crossclaim to name the Stroud Defendants.

6. Upon information and belief, defendant and crossdefendant Warner Bros. Entertainment, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York.

7. Upon information and belief, defendant and crossdefendant Warner Bros. Independent Pictures is a subsidiary of Warner Bros. Entertainment, Inc.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1332 and 1335, to the extent such subject matter must be established by this crossclaim. *See Danner v. Himmelfarb*, 858 F.2d 515 (9th Cir. 1988). Crossdefendants have claimed or may claim to be entitled to property formerly in possession of plaintiff Methven & Associates Professional Corporation (the "Methven Firm") in the underlying action and deposited with the Court pursuant to its Order of January 21, 2014. At least two of crossdefendants are of diverse citizenship.

9. The value of the property in the underlying action exceeds $500.

10. Pursuant to 28 U.S.C. section 1391, venue in the District Court for the Northern District of California is proper because at least one of the crossdefendants, Brown, resides in San Francisco, California.

## FACTS

**A.   The RCA Contracts.**

11. Nina Simone (born Eunice Kathleen Waymon) was a popular and successful singer and pianist primarily known for performing jazz, although her work spanned many musical genres. In 1966, she signed an exclusive recording contract with Radio Corporation of America ("RCA") under which she would make a number of phonograph records for RCA, and in return, RCA would pay her royalties on the sales of those recordings. RCA had several options to renew under the contract, which it exercised. Over time the agreement was occasionally amended, but Nina Simone remained under exclusive contract with RCA for nearly ten years, until the mid-1970s.

12. BMG Music ("BMG"), and then Sony Music, became successors-in-interest to the contracts between RCA and Nina Simone.

13.     After the last contractual period ended, Nina Simone continued to receive royalties for the RCA recordings from RCA and its respective successors-in-interest until her death in 2003. Following her death, as RCA's successor-in-interest, Sony Music paid – and continues to pay – royalties to the Simone Estate.

**B.     Andrew Stroud.**

14.     Nina Simone was married to defendant Andrew Stroud ("Stroud"), who at times served as her manager and producer.  On information and belief, Stroud produced some of her recordings while she was under contract with RCA.  In addition, he had his own contractual agreement with RCA for that work, and received producer royalties directly from RCA.

15.     In 1972, while Nina Simone was still under contract with RCA, she and Stroud divorced.  On September 21, 1972, they entered into a marital settlement agreement (the "Marital Settlement Agreement.")

16.     As part of that agreement, Stroud and Nina Simone purported to divide ownership of certain master tapes and the Nina Simone recordings embodied thereon.  Importantly, the Marital Settlement Agreement stated explicitly that Stroud could only have rights in those recordings "provided such use shall not be in violation of the exclusivity provisions of the Wife's recording agreement with RCA Victor."  In other words, Stroud was not entitled to exploit any Simone recordings that had been recorded while she was under exclusive contract with RCA.

17.     Most, if not all of the works Nina Simone purportedly "conveyed" to Stroud pursuant to the Marital Settlement Agreement were recorded while Nina Simone was under exclusive contract with RCA.

**C.     Steven Ames Brown and the 1992 Agreement.**

18.     On information and belief, in 1988 Steven Ames Brown began to represent Nina Simone as her attorney.  In 1992, on her behalf he negotiated an agreement with BMG, the then-successor to the RCA contracts.  The 1992 Agreement specifically acknowledged that all of RCA and BMG's payments and practices under the RCA agreements with Nina Simone had been correct and proper.

19. The 1992 Agreement also provided for a change to the parties' prior practices. Namely, "Simone, acting in her capacity as an authorized representative of Stroud," directed that producer royalties payable to Stroud under his separate agreement with RCA now be "sent to Stroud in care of Simone's address. . . ."

20. As part of the 1992 Agreement, Nina Simone represented and warranted that she was authorized and empowered to make such a direction, and in addition, she indemnified BMG against any damages or losses arising out of any proceeding brought against BMG inconsistent with her representations.

### D. Brown's Lawsuits On Simone's Behalf.

21. On information and belief, starting in about 1994, Mr. Brown represented Nina Simone in lawsuits in the Northern District of California against various persons and entities who were allegedly unlawfully exploiting her works (the "Prior Litigation"). He obtained stipulated judgments and permanent injunctions on her behalf.

22. On information and belief, Nina Simone "paid" Mr. Brown for his work in the Prior Litigation by assigning him 40% of her rights in the works he "recovered" in these lawsuits.

23. Brown has represented that the unlawful exploitation he was stopping by way of the Prior Litigation was the result of Stroud's unlawful "licensing" of works he had in his possession in violation of the Marital Settlement Agreement..

### E. The New York Case.

24. In or around April 2002 Stroud contacted BMG and stated that Nina Simone was not an authorized representative of Stroud Productions Inc. at the time that she directed the royalties and accountings to be mailed to a new address. In other words, Stroud alleged to BMG that Simone's representation in the 1992 Agreement – that she had the authority to re-direct his producer royalties to her address – was false.

25. In response to that notification, BMG continued to accrue royalties to the Stroud producer account, but held payments pending resolution of the dispute between Stroud and Nina Simone over the rights to that account.

26. In 2003, Nina Simone passed away. The Simone Estate became the recipient of her royalty earnings under her artist agreements. The producer royalties, however, continued to accrue, as the dispute remained unresolved.

27. In 2005, Stroud sued Sony Music in the Supreme Court of the State of New York, New York County, Index No. 601798/05 (the "New York Action"), for failure to pay royalties under his producer agreement with RCA. Stroud eventually added Brown as a co-defendant in that suit.

28. In 2009, Sony Music settled the New York Action with Stroud.

29. On information and belief, Brown later defeated Stroud in the New York action by way of a dispositive motion on contractual statute of limitations grounds.

**F.** *Brown v. Stroud*.

30. In 2008, Brown brought suit against Stroud and one of his companies, Stroud Productions and Enterprises, Inc. *Brown v. Stroud*, 3:08-cv-02348-JSW (N.D. Cal. 2008). Stroud counterclaimed against Brown and the Simone Estate. Various amended pleadings were filed in which Brown, Stroud and the Simone Estate accused one another of unlawfully exploiting an increasing number of Nina Simone masters.

31. On October 1, 2009, Brown brought Sony Music into the case as a reply counter-defendant on a single claim for declaratory relief to determine ownership of the Nina Simone recordings at issue in the case, which eventually numbered in the hundreds.

32. Neither Brown nor any other party alleged any wrongdoing by Sony Music.

33. Sony Music, Brown and the Simone Estate sought through the course of discovery to determine which Nina Simone recordings were in the possession of Stroud or his companies. The Stroud Parties did everything in their power to prevent production of recordings in their possession.

34. The Stroud Parties were sanctioned by the Court and ordered to turn over all recordings in their possession. Nevertheless, with the exception of the recordings and personal effects that are the subject of the this interpleader action (addressed below), they have never done so. Nor have they paid court-ordered sanctions still owing to Sony Music and the other parties.

35. Andrew Stroud died on July 14, 2012. The Estate of Andrew Stroud was substituted into the litigation in his place.

36. After issuing several Orders to Show Cause, to which the Stroud Parties and their counsel failed to adequately respond, on February 14, 2013, the Court struck all responsive pleadings and affirmative claims of the Stroud Parties, and entered default against them.

37. Upon motion of the Simone Estate, Sony Music and Brown, the Court entered judgment against the Stroud Parties on July 11, 2014.

38. Upon motion of the Simone Estate, the Court entered an amended judgment on December 19, 2014. In it, the Court awarded the Simone Estate monetary damages in the amount of $84,375,000.00.

### G. The Instant Interpleader Action.

39. The Methven firm represented the Stroud Parties for some time during the *Brown v. Stroud* litigation, including the time when Stroud was refusing to produce the majority of the Nina Simone recordings. Methven was in possession of a subset of recordings and Simone personal items that Stroud had provided to Methven for production in discovery.

40. After Stroud passed away and it became evident that the various parties would be disputing ownership and possession of the recordings and other items, Methven brought the above-captioned interpleader action.

41. The Methven firm's interpleader complaint requested, *inter alia*, that this Court determine the rights of defendant and crossclaimant Sony Music and the defendants and crossdefendants to certain property – principally made up of master recordings of Nina Simone – identified in Schedule A to Methven's interpleader complaint.

42. On September 24, 2014 the Court dismissed the Stroud Parties' affirmative counterclaims, struck the Stroud Parties' answer, and entered default against the Stroud Parties.

43. On October 21, 2014, this Court discharged the Methven firm and entered partial judgment in its favor.

//
//

**H.    Sony Music, Brown, and the Simone Estate Enter Into a Settlement Agreement.**

44.    On October 14, 2014, Sony Music, Brown, and the Simone Estate participated in a settlement conference before Magistrate Judge Maria-Elena James to resolve all disputes among those parties related to the recordings of Nina Simone, whether or not such disputes were raised in the various cases described above.

45.    At the conclusion of the settlement conference, confidential settlement terms were entered on the record.  A transcript of proceedings is attached hereto as Exhibit A and incorporated here by reference.

46.    ███████████████████████████

   a.    ███████████████████████████████████████
         ███████████████████████████████████████
         ███████████████████████████████████████
         ███████████████████████████████████████
         ████████████████

   b.    ███████████████████████████████████
         ████████████████████████████

   c.    ████████████████████████████████████████
         ███████████████████████████████████████
         ████████████████

   d.    ███████████████████████████████████████
         ███████████████████████████████████████
         ███████████████████████████████████████
         ██████████████████████████

   e.    ████████████████████████████████████████
         ██████████████████████████████████████
         ██████████████████████████████████████
         ██████████████████████████████████████
         ██████████████████████

[redacted]

f. [redacted]

g. [redacted]

47. Sony Music has timely complied with every term set forth above as it has become due. [redacted]

48. Brown and the Simone Estate have not complied with the terms that they agreed to. [redacted]

**I. <u>Brown and the Simone Estate's Refusal To Negotiate In Good Faith.</u>**

49. [redacted] Brown has asserted that he has an agreement with the Simone Estate that permits him to make substantive decisions related to the litigation on its behalf. Invoking this power, Brown instructed that long-time counsel for the Simone Estate, Dorothy Weber, was not permitted to speak to counsel for Sony Music outside of his presence, nor would Ms. Weber be permitted going forward to negotiate on behalf of the Simone Estate. Ms. Weber ceased taking calls from counsel for Sony Music and refused to

Coblentz Patch Duffy & Bass LLP
One Ferry Building, Suite 200, San Francisco, California 94111-4213
415.391.4800 · Fax 415.989.1663



communicate with counsel for Sony Music without Brown's participation.  Her sparse written communications were limited to those on which Brown was copied.  On information and belief, she completely ceased making litigation-related decisions for the Simone Estate absent Brown's approval.

50. More, Brown began – for the first time in more than four years of litigation in which he had been both acting counsel and counsel of record for himself – to invoke the premise that he is also a represented party to the action to communicate directly with the client representative at Sony Music *to the exclusion of Sony Music's counsel of record*.  ███████ ████████████████████████████████████████████████████████████████████████████ When Sony Music suggested that Brown have his own counsel of record, Therese Y. Cannata, participate on his behalf, he refused.  In other words, the sole purpose of his invocation of his status as "party" was to exclude Sony Music's counsel from participation.

51. Understandably, Sony Music resisted this denial of its right to counsel, the results at times being almost farcical.  For example, when – over Brown's objections – Sony Music insisted on having its counsel of record present for an in-person negotiation, Brown refused to bring his retained counsel to the meeting *even though the meeting was held in her offices*.  Rather, he insisted that counsel for Sony Music could attend only if she agreed to remain silent in his presence.

52. This is despite the fact that Brown and counsel for Sony Music had, throughout the four previous years of litigation, drafted joint court submissions together, made court appearances together, drafted discovery together – indeed, Brown commonly offered to drive counsel for Sony Music to and from court appearances in his car.  Moreover, Brown has been a practicing litigator in the music field for decades, representing hundreds of clients – including himself – in music-related cases.  With respect to negotiating the settlement terms, however, he improperly and self-servedly invoked the bar to counsel communicating with a represented party whenever it suited him.

53. ████████████████████████████████████████████████████████████████

COBLENTZ PATCH DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

[redacted]

54. [redacted]

55. [redacted]

56. [redacted]

57. [redacted]

58. [redacted]

[redacted]

59. During this time, the Simone Estate sought to amend its judgment against Stroud in *Brown v. Stroud.* Specifically, because Stroud had failed to convey to the Simone Estate the *res* sought by the Simone Estate in the litigation, the Simone Estate sought the monetary value of that *res.*

60. [redacted]

61. [redacted]

62. [redacted][2]

[2] Among other problems, this wrongly assumes that the monetary value of the recordings awarded to the Simone Estate under the amended judgment was limited to the value of the physical (footnote continued)

COBLENTZ PATCH DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1  63. █████████████████████████████████

2 ████████████████████████████████████████

3 ██████████████████████████████████

### FIRST CAUSE OF ACTION
### (Rescission of Settlement Agreement)
### (Against Brown and the Simone Estate)

64. Sony Music incorporates its allegations from paragraphs 1 through 63 above.

65. Sony Music, the Simone Estate, and Brown entered into a settlement agreement on the record in this Court on October 14, 2014.

66. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

67. The Simone Estate and Brown have failed, in whole or in part, to provide the consideration promised in the parties' settlement agreement. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

68. The Simone Estate and Brown's failure, in whole or in part, to provide the promised consideration was material and went to the essence of the parties' agreement and continues to this day.

69. By failing to provide the promised consideration, the settlement agreement is rescinded and the settlement agreement is extinguished, and Sony Music is entitled to bring claims in this action.

---

embodiment of the recordings and the rights other than the rights of reproduction. The appraisal relied upon by the Estate in its motion to amend the judgment made no such distinction, nor is it remotely reasonable that the value of the works would be as appraised if they were so limited.

## SECOND CAUSE OF ACTION
### (Breach of Contract)
### (Against Brown and the Simone Estate)

70. Sony Music incorporates its allegations from paragraphs 1 through 69 above.

71. Sony Music, the Simone Estate, and Brown entered into a binding settlement agreement on the record on October 14, 2014.

72. ■

73. ■

74. Sony Music did all, or substantially all, of the significant things that the settlement agreement require it to do, or was otherwise excused from doing those things.

75. All conditions required by the settlement agreement for the Simone Estate and Brown's performance have occurred.

76. ■

77. ■

78. Sony Music has been harmed by the Simone Estate and Brown's breach.

## THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)
### (Against Brown and the Simone Estate)

79. Sony Music incorporates its allegations from paragraphs 1 through 78 above.

80. Sony Music, the Simone Estate, and Brown entered into a binding settlement

1 agreement on the record on October 14, 2014.

2  81.  ████████████████████████████████████████
3 ████████████████████████████████████████████
4 ██████████

5  82.  Sony Music did all, or substantially all, of the significant things that the settlement
6 agreement require it to do, or was otherwise excused from doing those things.

7  83.  All conditions required by the settlement agreement for the Simone Estate and
8 Brown's performance have occurred.

9  84.  ████████████████████████████████████████
10 ████████████████████████████████████████████
11 ████████████████████████████

12  85.  Sony Music has been harmed by the Simone Estate and Brown's breach.

**FOURTH CAUSE OF ACTION**
**(Declaratory Relief – 28 U.S.C. § 2201)**
**(Against All Crossdefendants)**

15  86.  Sony Music incorporates its allegations from paragraphs 1 through 85 above.

16  87.  There is an actual controversy as to which party is lawfully entitled to the property
17 listed in Attachment A to the Methven Firm's interpleader complaint in this action.

18  88.  Sony Music is entitled to a declaration of its rights, liabilities and obligations, in
19 particular, a declaratory judgment confirming it is entitled to own, possess, exploit, or not exploit,
20 those master recordings listed in Attachment A to the Methven Firm's interpleader complaint
21 which were recorded by Nina Simone while under contract with RCA.

**PRAYER FOR RELIEF**

23 WHEREFORE, defendant and crossclaimant Sony Music prays for judgment as follows:

24  1.  For rescission of the October 14, 2014 settlement agreement;

25  2.  For a judicial declaration that Sony Music is entitled to own, possess, exploit, or
26 not exploit, the master recordings identified in Attachment A to the Methven Firm's interpleader
27 complaint which were recorded by Nina Simone while under contract with RCA;

28  3.  For judgement on all of its claims;

4. For a judicial declaration that Sony Music is entitled to own, possess, exploit, or not exploit, the master recordings recorded by Nina Simone while under contract with RCA;

5. For attorneys' fees and costs of suit;

6. For damages according to proof; and

7. For such further relief as the Court deems just and proper.

DATED: April 30, 2015                COBLENTZ PATCH DUFFY & BASS LLP

By:    /s/ Julia D. Greer
       Julia D. Greer
       Attorneys for Defendant/Crossclaimant SONY
       MUSIC ENTERTAINMENT, erroneously sued as
       SONY MUSIC HOLDINGS, INC.