**STEVEN AMES BROWN**
Entertainment Law 83363
69 Grand View Avenue
San Francisco, California 94114-2741
415/647-7700 Tele
415/285-3048 Fax
sabrown@entertainmentlaw.com

**THERESE Y. CANNATA**, SBN 88032
Cannata, Ching & O'Toole, LLP
100 Pine Street
San Francisco, California 94111
415/409-8900 Tele
415/409-8904 Fax
tcannata@ccolaw.com

Attorneys for Plaintiff Brown

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEVEN AMES BROWN, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW B. STROUD, an individual and *dba* STROUD PRODUCTIONS AND ENTERPRISES, INC. <br><br> Defendant. <br> _____/ <br><br> METHVEN & ASSOCIATES PROFESSIONAL CORPORATION, <br><br> Plaintiff <br><br> v. <br><br> SCARLETT PARADIES-STROUD, *ET AL,* <br><br> Defendants <br> _____/ | CIVIL NO. 08-02348 JSW (MEJ) <br><br> Related Case: 13-1079 JSW (MEJ) <br><br> DECLARATION OF NEWLY DISCOVERED INFORMATION IN SUPPORT OF MOTION TO UNSEAL TRANSCRIPT <br><br> Ctrm: HON. MARIA-ELENA JAMES |

1. Late this afternoon I discovered new evidence that Sony has itself made the terms of the October 14, 2014 settlement public which I submit is yet another reason why it cannot sustain its burden of proving compelling reasons for sealing its counterclaims or maintaining the seal on the settlement conference transcript.

This afternoon I learned of an article in the *The Hollywood Reporter* which contained the very terms which Sony claims must remain confidential. I attach a true copy as *Exhibit 4* (consecutive with my prior exhibit numbers). The article makes clear that the reporter has possession of an unredacted copy of Sony's counterclaims.

> "***According to a document that Sony is attempting to seal or at least redact***, it was to pay $390,000 to Brown under the settlement, reverse $105,963 in producer costs for Simone, and change royalty rates for Simone recordings. In exchange, the Simone estate and Brown would quitclaim to Sony the rights to various Simone recordings."

*Exhibit 4,* (emphasis added).

Since I did not supply the reporter with a copy of Sony's unredacted counterclaims, since Dorothy Weber assured me she had not supplied him with the document and given that it was unlikely that Sony gave him the document, the only plausible explanation was that Sony e-filed a document that was not actually redacted. I opened the Sony counterclaims file that I downloaded from PACER, *Brown v. Stroud Document 670,* highlighted the blacked out text in paragraph 42, copied it to the buffer and then pasted the text onto a blank page and it was plainly visible. Basically, Sony put nice black boxes over some of the words, but did not redact any of the text.

According to the ECF notification, Attorney Greer uploaded the document. She is Sony's attorney and therefore, Sony alone is responsible for putting the entirety of its counterclaims into the public record. Now that the unredacted document is in the hands of a reporter and a first feature story has been published by the leading entertainment

1 industry publication, *The Hollywood Reporter*, Sony's counterclaims are now truly public
2 as well as the terms of the October 14, 2014 settlement.
3     Worse for me, Sony's scurrilous allegations against me are now in the most
4 important trade paper in my industry and I'm the only one who is gagged and unable to
5 clear my good name.  At this point Sony is using the pretext of confidentiality as both a
6 shield and a sword and I'm being prejudiced.  As Sony itself has cast the settlement
7 terms into the public record and discourse, there is no basis for sealing its counterclaims
8 or maintaining the seal on the settlement conference transcript.
9     Pursuant to the laws of the United States, I declare under penalty of perjury the
10 foregoing is true and correct.
11     Dated: May 6, 2015

/X/
STEVEN AMES BROWN



 

**SUBSCRIBE**

Search

POWER                POWER BUSINESS

**MAY 06, 2015**  4:50pm PT by Eriq Gardner

# Nina Simone's Songs in Limbo as Sony Music Battles Family Over Secret Deal



ADVERTISEMENT



Associated Press



# A quarter century of legal mania over the famed singer takes an explosive turn.

In a long, complicated fight over the music of **Nina Simone**, the legendary singer and songwriter who died in 2003, all hell has broken loose. Sony Music has filed papers in a San Francisco federal court aiming to rescind a settlement agreement with the singer's estate and her former lawyer. The recording giant seeks confirmation that it owns and can exploit many of Simone's master recordings upon word that its rights might be shockingly limited.

Over the past quarter century, Simone's posthumous fortunes have been heavily litigated in a dazzling array of lawsuits.

Up until recently, one of the key players in the fight has been **Andrew Stroud**, Simone's former husband, manager and producer who claimed to have been given some ownership of the singer's recordings upon divorce in 1972. Stroud died in 2012 and hasn't been particularly successful in pursuits such as a copyright infringement lawsuit against Warner Bros. for including the Simone song "Just in Time" in a key scene in **Richard Linklater**'s film *Before Sunset*.

Then, there's **Steven Ames Brown**, an attorney who represented Simone in the late 1980s and 1990s and worked out a deal where he would be assigned 40 percent of her rights to works he "recovered." He started bringing litigation on Simone's behalf against various record companies and has claimed victories over the years. He also renegotiated an agreement with Sony in 1992 and had royalty payments for Stroud redirected.

**READ MORE** | Power Lawyers 2015: Hollywood's Top 100 Attorneys Revealed

More lawsuits would follow over royalties payable and whether Stroud had improperly licensed Simone's recordings and personal effects, but in the interest of not getting too bogged down into the eye-popping complexity of this dispute, let's jump to last October when Sony Music, Brown and the Simone estate participated in a settlement conference before a magistrate judge in an attempt to resolve all disputes related to the singer's recordings.

The result of those negotiations was an agreement. Sony lawyers have gone to many lengths

to keep it private -- telling a judge just yesterday that if its competitors, own recording artists and potential Sony recording artists learn about this "atypical" settlement, it would represent a "significant danger."

According to a document that Sony is attempting to seal or at least redact, it was to pay $390,000 to Brown under the settlement, reverse $105,963 in producer costs for Simone, and change royalty rates for Simone recordings. In exchange, the Simone estate and Brown would quitclaim to Sony the rights to various Simone recordings.

A long-form agreement was supposed to follow, but the deal has hit a snag.

Last week, Sony came forward to submit crossclaims in an action brought by Stroud's law firm, which was in possession of many of Simone's recordings and didn't know what to do with them. So the firm filed a complaint as an interpleader with everyone (include Warner Bros.) who has ever fought over Simone recordings named as a defendant.

READ MORE | Power Lawyers 2015: Hollywood's Top Music Business Attorneys Revealed

Here, Sony describes why its settlement agreement should be rescinded. The record company says it made the $390,000 payment to Brown, but that afterwards, the other parties didn't lived up to their side of the bargain. Sony says that after the October settlement conference, Brown made "negotiations of the long-form agreement nearly impossible."

Among other things, Sony and Brown have been at odds over which works have been quitclaimed with Sony aghast that it has allegedly paid $390,000 for works "already owned by Sony Music." Then, there's the issue of an $84 million default judgment entered last December against Stroud's estate in favor of the Simone estate.

"The Estate's judgment against Stroud compensates the Estate for works that, under the terms agreed upon at the settlement conference, belong to Sony Music," states Sony in its cross claim. "Aware that contesting the Estate's motion to amend the judgment would likely destroy the parties' ability to come to a long-form agreement, Sony Music instead raised the issue with Brown and the Estate out of court, and invited the parties to find a mutually agreeable way to remedy it."

Here's where it gets really explosive.

Sony then adds, "In response, Brown took the position for the first time that he and the Estate

had conveyed to Sony Music only the *reproduction* rights in the Simone masters, and no other rights. In particular, according to Brown, he and the Estate did not convey the rights to the physical embodiment of the recordings to Sony Music (nor, according to Brown, the public performance rights, the distribution rights, or any other of the 'bundle of rights' that constitutes copyright...")

If the implication isn't clear, Sony spells it out.

"Sony Music literally cannot exploit the masters and pay Brown and the Estate royalties if the only rights it owns are the rights of reproduction," it says.

Now, Sony is looking to rescind the settlement agreement and also sue Brown and the Estate for breaching contract and the covenant of good faith and fair dealing. It's looking to determine once and for all who owns these Nina Simone recordings -- among them, such iconic songs as "Strange Fruit" and "Black is the Color" -- which could have the judge examining a half century's worth of events, including Simone's contracts with Sony predecessor RCA in 1966, her divorce with Stroud and the settlement agreement with Brown. And along the way, this usual examination could throw open sensitive details about Sony's past and current royalty practices.

An attorney for the Simone estate declined comment.