Pursuant to Local Rule 3-4(a)(1)
please see the last page for a
listing of parties represented

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

STEVEN AMES BROWN,

          Plaintiff,

     v.

ANDREW B. STROUD, an individual and
*dba* STROUD PRODUCTIONS AND
ENTERPRISES, INC.

          Defendant.

_____/

METHVEN & ASSOCIATES
PROFESSIONAL CORPORATION,

          Plaintiff

     v.

SCARLETT PARADIES-STROUD, *ET AL,*

          Defendants

_____/

CIVIL NO. 08-02348 JSW (MEJ)

Related Case: 13-1079 JSW (MEJ)

APPLICATION FOR AN ORDER TO
SHOW CAUSE WHY ORCHARD
ENTERPRISES NY, INC. AND/OR
SONY MUSIC ENTERTAINMENT
SHOULD NOT BE FOUND IN
CONTEMPT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................................ii

SUMMARY OF ARGUMENT ..................................................................................iv

A.   Introduction. ..................................................................................1

B.   The Injunctions Being Violated..................................................................1

C.   Non-parties with Notice Must Obey Injunctions and are Subject to Contempt Proceedings if They Fail. 2

D.   Tomato Was Duly Served with the Tomato Injunction and Continues to violate it and the Excell Injunction.................................................................................4

E.   Eggers is personally in contempt. ................................................................5

F.   Orchard Has Been Knowingly Acting in Concert with Tomato in Violation of the Injunctions Since at Least October 2012. ................................................................6

G.   Sony Has Been Knowingly Assisting in the Violation of Two Injunctions Since at Least October 2012 and a Third Since July 2014. ................................................................9

H.   Orchard and Sony's Conduct Was Willful. ................................................13

I.   Moving Parties Request Imposition of Appropriate Sanctions. ....................................14

TABLE OF AUTHORITIES

Cases

*Alemite Mfg. Corp. v. Staff*,
   42 F.2d 832 (2d Cir. 1930)...................................................................................... iv, 3, 9, 10

*Goya Foods, Inc. v. Wallack Mgmt. Co.*,
   290 F.3d 63 (1st Cir. 2002) ................................................................................................. 3

*Haeger v. Goodyear Tire & Rubber Co.*,
   793 F.3d 1122 (9th Cir. 2015) ........................................................................................... iv

*I. C. C. v. Rio Grande Growers Co-op.*,
   564 F.2d 848 (9th Cir. 1977) ..................................................................................... passim

*Illinois v. U.S. Dep't of Health & Human Servs.*,
   772 F.2d 329 (7th Cir. 1985) .............................................................................................. 3

*In re Napster, Inc. Copyright Litigation*,
   191 F.Supp.2d 1087 (N.D.Cal. 2002) .............................................................................. 12

*Institute of Cetacean Research v. Sea Shepherd Conservation Soc.*,
   774 F.3d 935 (9th Cir. 2014) ...................................................................................... iv, 14

*Irwin v. Mascott*,
   370 F.3d 924 (9th Cir. 2004) .............................................................................................. 3

*Levin v. Tiber Holding Corp.*,
   277 F.3d 243 (2d Cir. 2002).............................................................................................. 3

*NLRB v. Sequoia Dist. Council of Carpenters*,
   568 F.2d 628 (9th Cir. 1977) .......................................................................................... 2, 3

*NuScience Corp. v. Henkel*,
   CV 08-2661, 2015 WL 103378 (C.D.Cal. Jan. 5, 2015) ................................................... 3

*Parker v. Ryan*,
   960 F.2d 543 (5th Cir. 1992) ........................................................................................ iv, 3

*Perry v. O'Donnell*,
   759 F.2d 702 (9th Cir.1985) ............................................................................................ 14

*Peterson v. Highland Music, Inc.*,

   140 F.3d 1313 (9th Cir. 1998) ................................................................................. 2, 3

*Regal Knitwear Co.*,

   324 U.S. 9, 65 S.Ct. 478 (1945) ................................................................................. 3

*United States v. Paccione*,

   964 F.2d 1269 (2d Cir. 1992) ................................................................................. 5

*Waffenschmidt v. MacKay*,

   763 F.2d 711 (5th Cir. 1985) ................................................................................. 3

*Wolfard Glassblowing Co. v. Vanbragt*,

   118 F.3d 1320 (9th Cir. 1997) ................................................................................. 3, 5

<u>Statutes</u>

18 U.S.C. § 401 ................................................................................. 14

C.C.P. § 980(a)(2) ................................................................................. 12

<u>Rules</u>

Federal Rule of Civil Procedure 65(d) ................................................................................. 2, 7

**SUMMARY OF ARGUMENT**

Plaintiff Steven Ames Brown and Cross-Defendant Estate of Nina Simone apply for an order to show cause why Orchard Enterprises and/or Sony Music should not be adjudged in contempt for acting in concert with or otherwise rendering assistance to Tomato Records and Scarlett Paradies-Stroud ("Stroud") as administratrix of the Estate of Andrew Stroud, in violating three separate Northern District injunctions.

The Music Works, Ltd. *dba* Tomato Records and its owner and corporate officer, Kevin Eggers, hereinafter jointly ("Tomato"), are bound by two injunctions issued in 1998 which prohibit them from exploiting certain recorded Nina Simone performances.  In the Ninth Circuit an injunction issued against an entity binds its officers and any new entities they may create to carry on any prohibited activities.  *I. C. C. v. Rio Grande Growers Co-op.*, 564 F.2d 848, 849 (9th Cir. 1977).  Mr. Eggers and his current iteration of Tomato are exploiting prohibited Nina Simone recordings in violation of the two 1998 injunctions.  Stroud is violating this Court's 2014 injunction by exploiting prohibited Nina Simone performances.

Orchard acts as the agent of both Tomato and Stroud as the administratrix of the Estate of Andrew Stroud by digitally distributing prohibited Nina Simone performances on their behalf in violation of the three injunctions.  A party who knowingly acts as the agent of an enjoined party violates the injunction.  *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992).  Sony is liable for violating the injunction by rendering assistance to both Tomato and Stroud.  Someone who renders assistance to parties violating injunctions are also answerable in contempt.  *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930).  Brown and the Simone Estate are entitled to damages for their losses and reimbursement for the costs of prosecuting the contempt.  *See, e.g. Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122 (9th Cir. 2015); *Institute of Cetacean Research v. Sea Shepherd Conservation Soc.*, 774 F.3d 935 (9th Cir. 2014).

**A.  Introduction.**

Steven Ames Brown ("Brown"), Plaintiff in *Brown v. Stroud,* CV. 08-02348 JSW (MEJ) and Defendant in *Methven v. Paradise-Stroud,* CV. 13-1079 JSW (MEJ), and the Estate of Nina Simone by its special administrator, San Pasqual Fiduciary Trust Company (the "Simone Estate") Cross-defendant in *Brown v. Stroud* and Defendant in *Methven v. Paradise-Stroud* (sometimes jointly "Moving Parties") hereby bring an application for an order against Orchard Enterprises NY, Inc. ("Orchard") and Sony Music Entertainment ("Sony") (sometimes jointly "Respondents") to show cause why they should not be found in contempt for aiding, abetting and otherwise assisting in the violation of at least three injunctions issued by the District Court for the Northern District of California, with respect to multiple configurations of long-playing Nina Simone recordings which were unlawfully sold and continue to be sold in direct and knowing violation of such injunctions.

**B.  The Injunctions Being Violated.**

In 1995 Nina Simone filed suit to end unauthorized exploitation of her recorded performances by a number of record "pirates" and "bootleggers". [1]  *Simone v. Sehorn,* USDC NDCA 95-3590 CAL.  This application principally involves one particular putative chain of title defeated in that lawsuit.  Marshall Sehorn and his wife, Barbara Darcy, were the controlling shareholders of Excell Music, Inc. ("Excell").  Excell claimed to own various Nina Simone recorded performances as the successor-in-interest to Stroud Productions & Enterprises, Inc. ("Stroud Productions").  In turn, Excell purported to sublicense those same recordings to Tomato.

On July 10, 1998 Judge Legge signed a permanent injunction against, *inter-alia,* Sehorn, Darcy and Excell, invalidating their claim to those recordings and enjoining them from exploiting *any* Nina Simone recordings, or using her name or likeness in connection with any such activity ("Excell Injunction").  *Exhibit 1.*  On October 30, 1998 Judge Legge entered a similar permanent injunction against Tomato ("Tomato Injunction").  *Exhibit 2.*  On July 11, 2014 this Court entered

---

[1] A "pirated" record is an unauthorized copy of an authorized fixation.  A "bootlegged" record is a copy of an unauthorized fixation, such as surreptitiously recorded concert performance.

an interlocutory judgment in *Brown v. Stroud* declaring Stroud Productions and Mrs. Stroud (as the representative of Mr. Stroud's estate) to be bound by the Excell and Tomato injunctions, invalidating their claims to *any* Nina Simone recordings and enjoining them from exploiting *any* recorded Nina Simone performances ("Stroud Injunction").  *Document 609,* pg. 2:12-17.

Thus, effective in 1988, Tomato was permanently enjoined from exploiting *any* Nina Simone recorded performances or using her name or likeness in connection therewith. *Exhibit 1.*  Additionally, the grant of rights from Excell (on which Tomato had previously relied) was itself declared invalid that same year.  *Exhibit 2.*  The Excell "chain of title" began with Stroud Productions, which itself became bound by both the Excell and Tomato Injunctions in 2014.

Both the Excell and Tomato Injunctions contain the same broad language concerning its reach to third parties:

"The provisions of [this] judgment are applicable to and binding upon … all persons acting in concert with [Excell parties and Tomato parties, respectively] who have actual or constructive notice hereof." [2]

It is well settled that under Federal Rule of Civil Procedure 65(d), an injunction is binding upon "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

### C. Non-parties with Notice Must Obey Injunctions and are Subject to Contempt Proceedings if They Fail.

Both Orchard and Sony have been notified on multiple occasions of the injunctions and the Estate's position that they were bound by them.  *Brown Decl.* ¶¶ 11-13, 15.  It has long been settled law that a person with notice of an injunction may be held in contempt for aiding and abetting a party in violating it. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323–24 (9th Cir. 1998) (citing *NLRB v. Sequoia Dist. Council of Carpenters*, 568 F.2d 628, 633 (9th Cir. 1977)). This includes much applicable case law addressing the issue of when it is fair to hold non-parties to an injunction liable for aiding and abetting a party's violation of the

---

[2] The Stroud Injunction has the same language incorporated by reference. *Document 609,* pg. 2:12-17

injunction. *See, e.g., Regal Knitwear Co.*, 324 U.S. 9, 14, 65 S.Ct. 478 (1945); *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250–51 (2d Cir. 2002); *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75 (1st Cir. 2002); *Highland Music*, 140 F.3d at 1323–24; *Illinois v. U.S. Dep't of Health & Human Servs.*, 772 F.2d 329, 332 (7th Cir. 1985); *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985); *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832–833 (2d Cir. 1930). Likewise, knowingly acting as the agent of an enjoined party violates an injunction. *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992); See also, *Irwin v. Mascott*, 370 F.3d 924, 931 (9th Cir. 2004) ("the same processes for enforcing obedience to the order as if the violator were a party, such as holding him in contempt for violating it.") (internal quotations omitted).

"[T]o be held liable in contempt, it is necessary that a non-party respondent must either abet the defendant [in violating the court's order] or be legally identified with him," Peterson, 140 F.3d at 1323, *quoting NLRB v. Sequoia District Council of Carpenters*, 568 F.2d 628, 633 (9th Cir. 1977), and that the non-party have notice of the order. *Id.*

Accordingly, the Court may hold Orchard and Sony in contempt if Brown and the Simone Estate demonstrate that they (1) had actual notice of the order; and (2) acted in concert with defendants in violating those orders, or may be legally identified with defendants. *Peterson*, 140 F.3d at 1323. *See also NuScience Corp. v. Henkel*, CV 08-2661, 2015 WL 103378 at *2 (C.D.Cal. Jan. 5, 2015)

The standard for contempt is straightforward: the moving party must show by clear and convincing evidence that (1) the enjoined party violated a court order; (2) the violation demonstrably fell short of substantial compliance with the order; and (3) the violation was not based on a good faith and reasonable interpretation of the order. *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997) (citation omitted); *see also Irwin*, 370 F.3d at 932 (requiring clear and convincing evidence of willful disobedience of order to support finding of civil contempt).

As set forth more fully herein, and in the accompanying Declaration of Brown, Orchard and Sony, with <u>actual</u> notice of the injunctions, knowingly aided, abetted and otherwise assisted Tomato's violations of those injunctions since at least October 2012 through the present and

1   Mrs. Stroud's violations of the Stroud Injunction from July 2014 through approximately the end
2   of September 2015.

3       **D.  Tomato Was Duly Served with the Tomato Injunction and Continues to violate**
4       **it and the Excell Injunction.**

5       Nina Simone's principal claim against Tomato was that it's two-CD boxed set *Nina*
6   *Simone: The Tomato Collection,* was unauthorized.   *Exhibit 3.*  Plaintiff Brown attests he
7   personally served *summons & complaint* in *Simone v. Sehorn* on Tomato's W. Kevin Eggers.
8   *Brown Decl., ¶ 6.*  Tacitly admitting his company had no rights to the recordings Mr. Eggers
9   sent a proposal dated May 1, 1996 offering to license the disputed Nina Simone recordings
10  ***from*** Nina Simone.  *Id., Exhibit 4.*  On September 16, 1996 Tomato faxed a redline draft
11  agreement for the disputed recordings under which Tomato would license them ***from*** Nina
12  Simone on a non-exclusive basis, for the sole purpose of selling "audio-only configurations",
13  with Simone reserving all other rights of exploitation to herself.  *Ibid, Exhibit 5.*  Tomato's draft
14  specifically acknowledged at paragraph 14.l. that the purported license from Excell had been
15  <u>terminated</u>.  *Ibid.*  The offers were rejected and as Tomato failed to respond to the *complaint*,
16  it's default was requested.  *Ibid.*  The Tomato Injunction was entered on October 30, 1998.
17  *Exhibit 2.*

18      In 1998 Brown mailed a copy of the Tomato Injunction to Mr. Eggers.  Subsequent to
19  that date, Eggers again attempted to negotiate with Brown and during those discussions
20  Eggers was informed of the contents of the Excell Injunction and explained that injunction
21  enjoined Tomato and Mr. Eggers.  *Brown Decl., ¶¶ 7 – 8.*  At all times Eggers was the only
22  Tomato employee to communicate with Brown and he also held himself out to be Tomato's
23  owner.  *Id.*  In 2002 Brown obtained a copy of a notarized agreement executed by Eggers
24  personally guaranteeing the representations and warranties made by various Tomato entities.
25  *Ibid., Exhibit 6.*

26      The original 1994 infringing CD that was the subject of the *Simone v. Sehorn* lawsuit
27  bore the imprint "Tomato a trade name of The Music Works".  *Brown Decl., ¶ 8, Exhibit 3.*
28  Amazon's website currently bears the imprint "The Tomato Music Works Limited" as the entity

distributing the recordings.  *Exhibit 7.*  Eggers was running "Tomato Records" when the Tomato Injunction was entered and has been doing so since and throughout all this time has been selling the same *Nina Simone: The Tomato Collection*, with the same recordings, in the same order, with the same artwork and the same Tomato logo.  *Brown Decl.* ¶ 9; compare, *Exhibits 3, 7* and *8.*

Eggers, and any later-formed Tomato Records, entities, are clearly bound by the Tomato and Excell injunctions, jointly and separately.

"Ordinarily, **_the class of parties subject to an injunction or restraining order include_** the named parties, officers, agents, servants, employees, attorneys of the named parties and **_successors in interest to the property that is subject to the injunction_** or restraining order"

*United States v. Paccione*, 964 F.2d 1269, 1274 (2d Cir. 1992) (emphasis added.)

Any successor to Excell or Tomato that purported acquire the interest of any of Nina Simone recorded performances contained in the injunctions is bound by the injunctions.  No successor could acquire a bound company's interests free of the applicable injunction.

### E.  Eggers is personally in contempt.

Fed R. Civ. P. 65(d) likewise makes it plain that an injunction is binding on the officers and employees of a corporation. *See also* I.C.C., 564 F.2d at 849. When an entity is enjoined any future entity formed by an officer is also bound by the injunction along with the officer. Indeed, the injunction would be rendered without effect if a party bound could engage in the enjoined conduct by simply changing its name. See, e.g.,  *Id. ; Wolfard Glassblowing Co. v. Vanbragt,* 118 F.3d 1320 (9th Cir. 1997); As the Ninth Circuit held in I.C.C.:

"…they were bound by the prior permanent injunction and judgment. To find otherwise on this evidence would be to allow [defendants] to nullify the court's decree and circumvent the [plaintiff's] regulations by carrying out prohibited acts through successive corporations not party to the original actions. This we cannot accept."

*I.C.C.,* 564 F.2d at 849.

Thus, it does not matter whether any successor Tomato entity acquired only the Nina Simone recordings that were subject to the injunction, or substantially carried on Tomato's business, they are bound by the Tomato and Excell injunctions. Moreover, as an officer of Tomato, Eggers cannot evade compliance with the Tomato injunction by creating new company or series of companies.

As of this application there are three configurations of Nina Simone recorded performances Tomato is exploiting in violation of the Tomato, Excell and Stroud injunctions:

> *Nina Simone: The Tomato Collection* ("*Tomato Collection*")
>
> *The Best of Nina Simone* and
>
> *The Lady Has the Blues*

All three of these Tomato releases are currently available for purchase as digital downloads from emusic.com. *Id., Exhibit 8*. The *Tomato Collection* is also currently available for purchase as a digital download from amazon.com. *Ibid., Exhibit 7*.

**F.  Orchard Has Been Knowingly Acting in Concert with Tomato in Violation of the Injunctions Since at Least October 2012.**

Orchard is a "digital aggregator", which is essentially the business of acting as an agent for independent record companies. An "aggregator" uploads client recordings to retail platforms such as iTunes and Google Play, collects the sales proceeds from the retailer on behalf of its clients and then distributes the revenue by paying royalties to music publishers, retaining a share for itself and paying the balance to its clients.

There is no doubt that Orchard is Tomato's agent and acts as its digital aggregator. Orchard's name is listed right next to Tomato's name on the emusic.com web pages from which customers can currently purchase the three unlawful Nina Simone configurations. *Exhibit 8*. Additionally, Orchard listed "Tomato Records" as one of its clients in discovery responses herein. *Brown Decl.* ¶ 10. Orchard's discovery responses show it received and accounted to Tomato for both United States and overseas revenue for all three infringing configurations from

at least July 2009 through the present. *Id.* [3]

On October 18, 2012 Brown put Orchard's general counsel, Alexis Shapiro, Esq. ("Shapiro") on actual written notice that Orchard was violating the Tomato Injunction.

> "Among the catalogs your firm digitally distributes are the Nina Simone recordings from Tomato Records. I'm attaching an injunction against Tomato for your review. If you compare the injunction against Tomato's 'Nina Simone Tomato Collection' lineup, you'll see that your firm is pirating and bootlegging in violation of the injunction."
>
> *Brown Decl.* ¶ 11, *Exhibit 9.*

Ms. Shapiro never provided a substantive response notwithstanding acknowledging receipt. *Brown Decl.* ¶ 11.

Orchard's refusal to respond about its infringing activity does not appear to be inadvertent.  On the contrary, Orchard hired Tomato's attorney and sought to mislead the Court and hide information relevant to these proceedings.

Brown's 2012 email to Shapiro was in connection with a subpoena that he served on Orchard concerning its exploitation of recorded Nina Simone performances, including but not limited to acting on behalf of Andy Stroud, Inc. and Tomato Records.  The subpoena was directed to "Orchard Enterprises, Inc." *Document 512,* pg. 6-7.

Nowhere in in Orchard Enterprises, Inc.'s subpoena response did it state that it did not have the documents.  *Document 512*, pg. 8.  However, on March 13, 2013 Shapiro filed a declaration stating that she was General Counsel of "Orchard Enterprises, Inc." and that "The Orchard confirms that it does not have any category of requested documents in its possession, custody or control. I verify that this response is true." *Document 527,* pg. 3.  The declaration was clearly intended to mislead Judge Ryu because Shapiro did not disclose that (1) Orchard Enterprises NY, Inc. was the entity whose California agent had been served (2) she was

---

[3]  A partial protective order exists as to Orchard's discovery responses.  Protections exist only as to specific "amounts" of money.  *Document 745.*  Thus, Moving Parties are free to put into the public record all other information provided by Orchard in discovery.

General Counsel to Orchard Enterprises NY, Inc. [4], (3) the information sought existed in their IT system and (4) "Orchard Enterprises, Inc." had been dissolved 6 years earlier and therefore had no employees and no California agent which could have received the subpoena. Relying on Shapiro's declaration, Judge Ryu denied Brown's motion to compel production as <u>moot</u>. *Document 528.* [5]

Moreover, Orchard's deceitful declaration to Judge Ryu was prepared by Tomato's lawyer. The lead counsel listed on the declaration's caption was Jonathan D. Freund of Freund & Brackey LLP. *Document 527,* pg. 2. The same name, with the same physical and email address and telephone number appear in Orchard's discovery response as the business affairs contact for Tomato Records. *Brown Decl.,* ¶ 10. That law firm has been counsel to Mr. Eggers and Tomato Records since at least 2002. *Id.*

Orchard was again put on <u>actual</u> <u>notice</u> that it was violating the Tomato injunction by paragraph 41 of the third-party claims the Moving Parties filed on May 20, 2015. *Document 688,* pg. 9:2-10.

In the three years since Brown put Orchard on actual notice that it was violating the Tomato injunction, not only has Orchard refused to discuss the subject, it continues to act as Tomato's agent selling pirated and bootlegged Nina Simone performances in clear and repeated acts of contempt.

It is over three years since Orchard was first put on notice and six months since it was served with the claims herein, which again put it on notice and yet the recordings remain for sale in violation of the injunctions as a direct result of Orchard's actions. Orchard's, continuous, contumacious disrespect for the Court's orders must be redressed. Undoubtedly, Orchard will promptly pull down the pirated and bootlegged Nina Simone recordings after reviewing this filing, but that will not by any measure redress the flagrant contempt for the last three years.

---

[4]  Shapiro's status as Orchard Enterprises NY, Inc.'s General Counsel can be seen at Document 713, pg. 3:2-4.

[5]  Shapiro knew that the correct entity had been served, but took advantage of the fact that the letters "NY" had inadvertently been left off the subpoena. She misled Judge Ryu by representing in 2012 that she was General Counsel to "Orchard Enterprises, Inc." in 2012 when in fact that entity was dissolved in 1996, six years earlier.

Such serious and continuous misconduct does not become moot by the cessation of the activity.  On the contrary, the failure to punish the violation of injunctions not only is an injustice to the aggrieved, it cannot help but undermine the ability of the judiciary to enforce its orders. If nothing else, a finding should be made that Orchard is in contempt.  Allowing it to escape significant punishment would not only reward inexcusable behavior, it could only undermine the public's perception of the necessity of obeying judicial orders.

**G. Sony Has Been Knowingly Assisting in the Violation of Two Injunctions Since at Least October 2012 and a Third Since July 2014.**

It is clear that Sony has assisted Tomato's violations.  "We agree that a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt. This is well settled law."  *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930).

> "Sony Music became the majority investor in The Orchard in March 2012 following the merger of The Orchard with IODA, a Sony Music-owned digital distribution company.  At that time, The Orchard became the digital distributor of RED and select catalogs from Sony Music affiliates outside of the U.S."
>
> *Brown Decl.,* ¶ 12, *Exhibit 10.*

Thus, as of March 2012 not only did Sony Music have control of Orchard, but put it in charge of the vital function of digitally distributing not only the catalogs of Sony's RED distribution company, but a number of Sony's foreign record catalogs.  Basically, Orchard has been carrying out core functions of Sony's business, the exploitation of recorded music.  In March 2015 Sony announced that Orchard was its wholly owned subsidiary.  *Id.*  By the fall Sony replaced Orchard's General Counsel (Alexis Shapiro) with Neil Ross who it transferred from his SVP, Business and Legal position at Sony's RED.  *Document 749.*

Sony has been on actual notice of both the Tomato and Excell Injunctions since no later than March 18, 2011 when they were filed in these proceedings.  *Document 269,* pg. 10-13 and 19-23.

On October 12, 2012 Brown advised Gil Aronow, Executive Vice President for Business

and Legal Affairs for Sony's Commercial Music Group and Sony's trial counsel Julia Greer, Esq. that Orchard was violating the Tomato Injunction and that nearly its entire offering of Nina Simone recordings was pirated or bootlegged. *Brown Decl.,* ¶ 13, *Exhibit 11.* He also advised them that Sony's subsidiary was digitally distributing Nina Simone recordings in dispute in this action on behalf of Andy Stroud, Inc. Neither of them or anyone from Sony has ever supplied Brown with a response or made any inquiry as to Orchard's activities. *Brown Decl.,* ¶ 13.

On March 15, 2013, Sony and the Moving Parties moved for default judgment against the Stroud parties, jointly submitting a proposed judgment. *Document 524.* That proposed judgment would have made the Tomato and Excell judgments binding on Stroud Productions and Stroud as executor of Andrew Stroud's estate and enjoined them from exploiting any Nina Simone recorded performances. *Id.*

On April 19, 2013 Stroud informed the Court that Andy Stroud, Inc. had been dissolved and all of its assets had been transferred to its sole shareholder, Mr. Stroud.

> "In any event, the Decedent dissolved ASI as noted above and transferred all assets to himself personally so that he could represent himself. (Exhibit A) Accordingly, ASI did not exist after July 26, 2012." *Document 560,* pg. 13:37-14:2. [6]

On July 11, 2014 default judgment was entered, including the provision that Stroud, as the administrator of Andrew Stroud's estate was bound by the Tomato and Excell injunctions and she was enjoined from exploiting *any* Nina Simone recorded performances. *Document 609,* pg. 2:12-17. ("Stroud injunction").

Thus, at Sony's own request Orchard's digital distribution of Nina Simone recordings for Stroud as the administrator of Mr. Stroud's estate became unlawful on July 11, 2014. Unfazed by its own request for the Stroud injunction, Sony did nothing to cause its subsidiary to comply with the order. Stroud (as the Andrew Stroud estate administrator) along with her agent (Orchard) violated the Stroud Injunction commencing on July 11, 2014 through at least

---

[6]   Orchard's discovery production lists the current owner for the "Andy Stroud, Inc." catalog as "Andrew B. Stroud Estate" with contact as Scarlett Stroud at the email address abs-estate@optimum.net and the same physical address at which she was served with process in these proceedings *Brown Decl.,* ¶ 14.

September 2015.  *Brown Decl.,* ¶ 15, *Ex. 12*

Sony Music was more than a mere innocent bystander to Orchard's activities that violated the Tomato, Excell and Stroud Injunctions.  Not only did Orchard's activities generate revenue for its owner (Sony) [7], but as will be seen below Sony's refusal to exercise its rights of control over Orchard directly rendered considerable aid to Tomato and Stroud in their unlawful activity.

Unable to obtain any cooperation or even a response from Sony concerning Orchard's violation of the injunctions the Moving Parties filed reply counterclaims against Sony on May 20, 2015 once again putting it on actual notice of the violations.  *Document 688,* pg. 6:21-26.

Further, Brown wrote directly to Sony Music's Chairman, Doug Morris, on May 22, 2015 to put him and Sony on notice.

"The Orchard is digitally exploiting some 80 Nina Simone albums or compilations, none of which are authorized by the artist or her successors.

"Since no later than October 18, 2012 The Orchard was aware that it was violating an injunction issued in *Simone v. Sehorn…*

"At or about that same time Sony's Gil Aronow, Wade Leak and Sony's trial counsel, Julia Greer, were informed that the injunction had been served on Ms. Shapiro.

"To this day, The Orchard continues to violate the injunction."

*Brown Decl.,* ¶ 14; *Document 723,* pg. 11-15.

It is inarguable that Orchard and Sony's Commercial Music Group (the division that is controlling Sony's defense) both report to Mr. Morris and he had the authority and duty to order units under his supervision to cease unlawful activity.   The unlawful activity continued unabated.  The product distributed by Tomato and Stroud was not withdrawn from exploitation and Mr. Morris never responded.  *Brown Decl.,* ¶¶ 9, 14 and 15.

On October 18, 2015 Brown filed a motion before Judge James to compel Doug Morris

---

[7]   The protective order prohibits the Moving Parties from disclosing the specific "amounts" of profits, but not the fact that that profits were made.

to attend the November 3rd settlement conference.  Brown expressed skepticism that without Mr. Morris' personal attendance there would be anybody present with "'actual settlement authority' to bind all Sony operating units" around the world.  *Document 746.*  In response, Mr. Aronow filed a declaration assuring Judge James he would "have full and complete authority to negotiate a settlement with respect to the claims and issues raised by Brown and the other parties." *Document 747-1,* pg. 2:25-3:2.  In reliance on his sworn testimony Judge James denied the motion.  The "Court is satisfied by Sony's representation that it will have present at the settlement conference a person with full authority to settle these matters." *Document 748.*

That conference took place on November 3, 2015.  *Document 749.*  However, the Tomato releases are still for sale.  *Brown Decl.,* ¶ 9.  Orchard's unlawful activity was ratified by a senior Sony Music employee who swore under oath that he had the authority to instruct Orchard.

It is now over three years since Sony was first put on notice of the unlawful activity and six months since it was again put on notice by the filing of reply counterclaims and Brown's letter to Sony's chairman and the Tomato recordings are still unlawfully for sale.

Sony has at all times profited from Orchard's illicit activity and when confronted with the contemptuous behavior in 2012 failed to promptly act.  It is not sufficient for Sony to say that it is now taking (or has recently taken) corrective action, it should be punished because it failed to timely act when first advised of the activity and allowed it to continue through this date.

Sony acts as if it is entitled to two standards of justice.  Sony does not hesitate to turn to the Northern District to demand that other online actors obey common law ownership rights to pre-1972 recordings under Civil Code § 980(a)(2).  *In re Napster, Inc. Copyright Litigation*, 191 F.Supp.2d 1087, 1101 – 1102 (N.D.Cal. 2002) is a case in point.  Sony, in conjunction with other rights holders, took Napster to task for unauthorized exploitation of sound recordings, including pre-1972 recordings protected by California law.  Sony did not hesitate to pursue Napster into bankruptcy to protect its own interests, as well it should.  However, Sony believes that a separate legal standard applies when its units do the stealing.  This saga began in 1995 when Nina Simone first sued to rid the market of these pirated and bootlegged recordings.  It

1    is intolerable that 20 years later her successors are still battling over the same recordings,
2    especially when today's pirate is Nina Simone's own record company.

3          The Moving Parties will be deprived of justice if Sony is not at least declared in contempt.

4          **H.  Orchard and Sony's Conduct Was Willful.**

5          Whatever explanation Respondents tender must be viewed in the context of how the
6    Sony units have digitally exploited Nina Simone recordings.

7          At least with respect to Nina Simone, in excess of 90% of Orchard's US revenue comes
8    from "fencing" stolen property.   Domestically, Orchard had dozens of releases on retail
9    platforms and perhaps five were legitimate; the rest were pirated or bootlegged.   This is not
10   accidental; it is a business model.

11         Orchard's discovery responses demonstrate that clients for which it digitally distributes
12   Nina Simone recordings is a who's who of known pirates and obvious petty crooks.   There's
13   been a judgment and permanent injunction against Tomato since 1998.  Another Orchard client
14   has a Walnut Creek address, a "gmail" email account and operates under a total of 181 online
15   aliases.   Another client is an individual with 47 aliases, no address, his telephone number is
16   listed as "555-555-5555" and uses only a "gmail" account for contact.  A third client has 294
17   aliases.  *Brown Decl.,* ¶ 17.  There is no reasonable basis to assume that these or nearly any
18   of Orchard's clients had any legitimate claim to any Nina Simone recordings.

19         The complete indifference to whether or not Orchard trades in pirated and bootlegged
20   recordings is laid bare by the fact that *after* Orchard was joined in these proceedings it
21   continued to release additional unauthorized Nina Simone releases.   In July 2015, Orchard
22   released an album that not only pirated recordings owned by UMG, WMG, BMG Rights and
23   the Moving Parties, but also pirated two of Sony's Nina Simone tracks.  *Brown Decl.,* ¶ 18.
24   Orchard doesn't only pirate Sony's competitors, it pirates Sony and Sony refuses to put a stop
25   to the conduct. [8]

26         These facts are relevant because they relate to the issue of whether or not Respondents

27

28         ────────────────
           [8]   Sony profits either way when one of its units pirates recordings owned by another
     since they are all wholly owned subsidiaries.  The Moving Parties are the only losers because
     they are the only ones left unpaid.

act deliberately, or with reckless disregard of whether their actions are lawful.  The Respondents conduct with respect to the injunctions did not occur in a vacuum; it happened during the course of Sony's operations.  Details concerning how those Sony units conducted themselves during the same time period should be taken into account.

### I.    Moving Parties Request Imposition of Appropriate Sanctions.

Respondents have acted willfully and egregiously and should respond in an economic sanction to the Court.  The Sony units have acted in base disregard of the orders of this Court - at the very least they should be adjudged in contempt.[9]  Moreover, the Moving Parties are entitled to compensation.

 "[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order." *Institute of Cetacean Research v. Sea Shepherd Conservation Soc.*, 774 F.3d 935, 958 (9th Cir. 2014) (quoting *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir.1985)).

Since the issue of losses is inextricably interwoven with the factual issues surrounding the balance of the infringement claims, the most efficient means of assessing an award would be to try the issues together before a jury.  Among other things, the Court may wish to consider whether to instruct the jury that it must award damages for all sales in violation of the injunctions and the costs of prosecuting the contempt.  The losses occasioned by the violation of the injunctions are also part and parcel of the losses stemming from the balance of the infringement claims pending against Orchard and Sony.  To separate them into two evidentiary hearings would require substantial duplication of evidence.

Dated: November 16, 2015

Respectfully submitted,

/X/

STEVEN AMES BROWN,
Plaintiff in *Pro Se*

---

[9] The Court has statutory authority to punish both civil and criminal contempt pursuant to 18 U.S.C. § 401.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/X/
DOROTHY M. WEBER
Shukat, Arrow, Hafer, Weber &
Herbsman, LLP, attorneys for the
Estate of Nina Simone

Listing of counsel filing this paper:

**STEVEN AMES BROWN**
Entertainment Law 83363
69 Grand View Avenue
San Francisco, California 94114-2741
415/647-7700 Tele
415/285-3048 Fax
sabrown@entertainmentlaw.com

**THERESE Y. CANNATA SBN 88032**
Cannata, Ching & O'Toole, LLP
100 Pine Street
San Francisco, California 94111-5127
415/409-8900 Tele
415/409-8904 Fax
tcannata@ccolaw.com

Attorneys for Plaintiff

**DOROTHY M. WEBER**, *pro hac vice*
Shukat, Arrow, Hafer, Weber &
Herbsman, LLP
494 Eighth Avenue, Suite 600
New York, NY 10001
212/245-4580 Tele
212/956-6471 Fax
dorothy@musiclaw.com

Attorneys for Estate of Nina Simone